Porter, J.
The plaintiff in the present action, sold to Paul Lanusse in the year 1818, a plantation and negroes, and retained, as he alleges in his petition, a special mortgage on the property sold, to assure the payment of the purchase money.
In the month of April last, a suit was commenced by certain creditors of the said Lanusse, in order to compel him to a forced surrender of his property, in which the usual order was made by the judge of the first instance, and provisional syndics were appointed.
*449 Dec. 1821.
The petitioner being a privileged creditor, conceived that he was not obliged to await the liquidation of the bankrupt’s affairs ; and accordingly he instituted this suit, in which he alleges that the sum of $55,500, with interest on a portion of it, is due to him; and prays, that after notice is given to the insolvent, and his provisional syndics, the plantation and other property, purchased from him by Lanusse, may be siezed and sold to pay him the amount claimed in the petition.
The persons made defendants to this suit, appeared and filed various objections to the claim, which it is unnecessary to enumerate.
The district judge gave judgment against the petitioner, and from his decision this appeal is taken.
The principal question for decision is, whether a privileged and mortgage creditor, in case of a forced surrender, must come in and be paid by the syndics, out of the general mass, according to the rank and order of his claim : or whether he has not a right to proceed and recover his debt, by due course of law, in the same manner as if no such insolvency had been declared.
In the argument it seems, to have been admit *450 ted by the counsel, as well for the appellant as appellees; that with the exception of some regulations, not applicable to this case, the rules which apply to a voluntary surrender, govern that of a forced one.
In Spain, it appears clearly by the authorities cited, that in case of failure, whether established by the solicitation of the debtor, or decreed at the suit of his creditors, the practice was to appoint a person to take into possession all the property of the insolvent; collect the debts due to him; and finally, to exercise as far as I have been able to ascertain, the same duties which syndics do here.
The laws which provide for this appointment, make no distinction in regard to the property to be delivered up by the debtor; their language is as comprehensive as can be well imagined. They expressly state, that the whole, todos los bienes, is to be put into the hands of the depository; they make no exception as to that on which any of the creditors may have a particular privilege; nor can I find, after a most attentive examination, that they provide for the redelivery of this property to the creditor, or give him any relief by a suit at his particular instance. On the contrary, *451 they declare that the property thus deposited, that is the whole, shall be sold, in order that the creditors be paid according to their respective rights. Cur. Phillip, 2 par. sec. 25, no. 12, 167. idem. lib. 2, ch. 11, no. 32, 410. Par. 5, tit. 15. l. 1 & 2.
Under these regulations then, I think it is very plain, that the creditor, who was privileged, did not possess the right of proceeding against the insolvent, until his claim was regularly established in concurrence with the other creditors, and its rank ascertained : indeed, to have permitted such a course of proceeding, would not only have been contrary to the spirit of these laws, but have entirely defeated their end ; which was not merely to ascertain the rights of each creditor as against the debtor, but also to determine their rights in relation to each other. Instead of securing the property to attain this object, it would have introduced a scramble of individuals, ending in the greatest confusion, and have enabled the different creditors to exhaust the whole estate of the insolvent, by separate suits, and that, perhaps, to the prejudice of privileges of the highest order.
On examining the statutory provisions of our *452 own legislature, I cannot perceive they have introduced any change on that part of the law, which subject of the present enquiry. Like those of Spain, they provide for the delivery of all the property of the debtor; appoint provisional syndics for receiving and taking care of it; and order the whole to be sold. Act relative to the voluntary surrender of property, &c., 20th February, 1817.
A strong argument against the right set up by the plaintiff in this cause, is furnished by the 16th section of the act just quoted : in it the legislature are acting on the very subject before us, the rights of mortgage creditors; and they define these rights by limiting their opposition to having the property sold for cash, in case the other creditors wish to dispose of it on a credit. Now, if those who had a privilege were authorised to sell it themselves, I cannot see the necessity of giving them a right to interfere at all in the proceedings of the other creditors; nor how we can reconcile the power given to the latter to interfere with the sale of the property, with the right claimed here, to dispose of it to satisfy a particular claim.
If any doubt still remains, it is removed by *453 an examination of the 30th and 31st sections of the same act. The first requires all the property assigned, to be sold at public auction; and the latter evidently contemplates that real estate mortgaged to a particular creditor, makes a part of this property; for it confers an authority on the syndics to give a release of the mortgage, and directs them to hold the proceeds subject to the same rights that existed in the object thus disposed of.
One of the counsel who appeared for the appellants, expressed a doubt whether the act of our legislature on the subject of voluntary surrenders, had any application to the case of forced ones. Admitting this to be correct, we are then thrown back on the law as it anciently stood, and it has been already shewn that it does not differ in this respect from our own.
It was still further insisted, that the Civil Code, on the doctrine of respite, must govern this case ; but I cannot discover its application. The provisions contained in that title, relate to an entirely different course of proceeding, which bears little or no analogy to that which takes place in case of a forced surrender.
*454 Another ground was taken — it was insisted that the delay thus occasioned to the plaintiff, violated the constitution of the united states, and impaired the obligation of the contract. But it appears to me, that this delay is one necessarily occasioned in ascertaining the rights of the parties interested; and to hold that this impaired the obligation of a contract, would be to decide, that the proceedings in our courts, in ordinary suits, produced the same effect.
The principle involved in the present case, has been already decided in that of Williamson & al. vs. their creditors. 5 Mart. 620. And in the language used there, I am of opinion that as soon as the failure is declared, all property of the debtor passes into the hands of the creditors; and a general liquidation becomes necessary, for which purpose the creditors must resort to a sale of the estate.
I am therefore of opinion, that the judgment of the district court be affirmed with costs.
Martin, J.
I perfectly concur with every part of the opinion just pronounced.
The mortgaged premises cannot be sold, under an order of seizure, without a previous demand of payment. Now, when the *455 debtor, by a cession of his goods, voluntary or forced, has lost his faculty of standing in judgment, the demand of payment must be made on some person authorised by law to pay, or resist the payment, if this may be successfully done. The provisional syndics have not the faculty of doing either.
The creditors must then ex necessitate rei, wait till there be a person or persons on whom the demand may be made, and who can satisfy or oppose it.
The district judge was perfectly correct, and his judgment ought to be affirmed.